IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>JONATHAN J. MONSHOWER,<br><br>                      Defendant. | No. 15-00358-01-CR-W-DGK |

**GOVERNMENT'S SENTENCING MEMORANDUM
AND REQUEST FOR UPWARD VARIANCE AND DEPARTURE**

The United States of America, by and through Assistant United States Attorney Adam Caine, in anticipation of sentencing currently scheduled for August 31, 2016, respectfully provides the Court with the following overview of the Government's sentencing recommendation, which includes the following:

    *A.*     *Procedural History*

    *B.*     *Sentencing Guidelines Calculations*

    *C.*     *Sentencing Factors Under 18 U.S.C. § 3553(a)*

    *D.*     *The Government's Sentencing Recommendation*

A.     <u>Procedural History</u>

On October 22, 2015, a complaint was filed in the United States District Court, Western District of Missouri, charging the defendant with being a felon in possession of a firearm. On November 4, 2015, a federal grand jury for the Western District of Missouri returned a single count Indictment that charged the defendant with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), that is, being a felon in possession of a firearm. On March 28, 2016, the defendant

pled guilty to the single count charged in the Indictment. There was no plea agreement between the parties.

### B. *Sentencing Guidelines Calculations*

The final Presentence Investigation Report (PSR) calculated the defendant's base offense level as 20. (PSR ¶ 13.) The base offense level of 20 was applied because of the defendant's prior conviction for resisting arrest by fleeing. *Id*. A four level enhancement was applied for possessing a firearm with an altered or obliterated serial number pursuant to U.S.S.G. § 2K2.1(b)(6). (PSR ¶ 14.) A four level enhancement was applied for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6). (PSR ¶ 15.) After acceptance of responsibility was applied, the total offense level was 25. (PSR ¶ 23.) The defendant's criminal history category was calculated as category IV. (PSR ¶ 35.) The advisory Guideline range as calculated in the PSR is 84 to 105 months. (PSR ¶ 57.) Each party filed objections to the PSR. Considering the Government's position on the objections below, the advisory Guideline range would remain the same. The Government is requesting an upward departure and variance from the calculated Guideline range to 120 months imprisonment based on the nature and circumstances of the offense, and the defendant's underrepresented criminal history as detailed below.

    1.  *Defendant's Objections*

The defendant filed objections based on the consideration of his prior conviction of resisting arrest by fleeing in Jackson County, Missouri, case number 1016-CR03380-01. (PSR Addendum Pages 3 – 4.) Defendant argues his prior conviction for resisting arrest under Missouri law is not a crime of violence. *Id. citing United States v. Shockley*, 816 F.3d 1058 (8th Cir. 2016). The Government agrees that defendant's prior conviction should not be

2

considered a crime of violence in the calculation of the base offense level. Accordingly, the Government concedes the correct base offense level is 14, pursuant to U.S.S.G. § 2K2.1(a)(6).

    2.    *Government's Objections*

The Government filed an objection to the original PSR suggesting the four level increase be applied for possessing a firearm in connection with another felony offense, and that an additional six level increase be applied for the assault of an official victim pursuant to U.S.S.G. § 3A1.2(c)(2). (PSR Addendum Pages 1 – 2.) The Probation Office subsequently added the four level increase for possession in connection with another felony offense and responded that it did not believe the enhancement for assault of an official victim was applicable. *Id.* at Pages 2 - 3. The Government believes the Court will have sufficient evidence to apply both enhancements at sentencing. In addition to the facts detailed in the PSR paragraphs three through eight, the Government anticipates the arresting officer, Independence Police Department Officer Evan Bateman, will testify at the sentencing hearing. The Government anticipates Officer Bateman will testify that as he was patting down the defendant, he touched what appeared to be the top of a pistol in the defendant's waistband. When Officer Bateman discovered the gun, the defendant grabbed the grip of the gun, bent his knees, and aggressively turned toward Officer Bateman attempting to draw the firearm from his waistband. The Government anticipates Officer Bateman will testify that the defendant's actions were consistent with someone drawing a firearm and pointing a firearm at another individual. Officer Bateman will likely testify that he was able to maintain a position behind the defendant and that he forced the defendant to the ground on his stomach. The Government anticipates Officer Bateman will testify that the defendant kept his hand on the firearm in his waistband until another officer arrived and assisted Officer Bateman.

The facts that will be adduced at the sentencing hearing provide sufficient evidence to apply both enhancements detailed in the Government's objections. The defendant's conduct described above, and in paragraphs three through seven of the PSR are sufficient to apply the enhancement for possessing the firearm in connection with the felony offense of resisting arrest (or a lawful stop) under Missouri law. *See* Mo. Rev. Stat. § 575.150. Under Missouri law it is a felony to resist an arrest, detention or stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person. *Id.* The defendant's act of resisting the officer, grabbing the firearm in the defendant's waistband, and attempting to draw his weapon on Officer Bateman is sufficient evidence to tie the defendant's possession of the firearm to the felony offense of resisting arrest (or a lawful stop or detention) under Missouri law. The struggle for the firearm and the defendant's attempt to retrieve the firearm and turn toward the officer created a substantial risk of serious physical injury or death to both the defendant and Officer Bateman, therefore the increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) should be applied.

A six level increase be applied for the assault of an official victim pursuant to U.S.S.G. § 3A1.2(c)(2). The defendant's actions detailed above similarly qualify for an increase because the defendant knew or had reasonable cause to believe he was assaulting a law enforcement officer. The Eighth Circuit has previously applied U.S.S.G. §§ 2K2.1(b)(6)(B) and 3A1.2(c)(2) enhancements under a similar factual scenario in *United States v. Hill*, 583 F.3d 1075 (2009). In *Hill*, a Kansas City, Missouri police officer stopped at the scene of a one car accident and Hill ran from the passenger side of the car. *Id*. at 1077. The officer chased Hill, and during the Chase, "Hill turned toward [the officer] at least three times, squared his body, and unsuccessfully attempted to draw an object from his waistband." *Id*. The officer could not tell what Hill had in

4

his waistband but "'drew down'" his duty weapon and ordered Hill to the ground. *Id*. Hill did not obey and the officer physically pinned Hill to the ground and restrained Hill until backup arrived. *Id*. Hill continued to resist and made unsuccessful attempts to retrieve something from his waistband. *Id*. A revolver fell out of Hill's waistband and was recovered. *Id*. The Eighth Circuit affirmed the application of U.S.S.G. §§ 2K2.1(b)(6)(B) and 3A1.2(c)(2) finding that Hill's actions created both a substantial risk of serious physical injury and death, and that Hill's conduct was assaultive in nature. *Id*. at 1078 – 1080.[1] Similar to the facts of *Hill*, the defendant in the above captioned case struggled with the officer, attempted to retrieve his weapon from his waistband, and while grabbing for his firearm, attempted to spin and face the officer. (PSR ¶ 4.) The defendant was aware he was being detained or stopped by a law enforcement officer, and his conduct was an assault that created the risk of serious physical injury, or death to the officer. *See e.g. Hill*, 583 F.3d at 1080 ("Hill's actions were assaultive, . . . repeated attempts to retrieve a firearm from his waistband created a substantial risk of serious bodily injury to [the officer]").

The Probation Office attempted to distinguish the facts of this case from *Hill* by arguing that "Hill attempted to draw a firearm as he squared up with the officer." (PSR Addendum Page 2, *citing* U.S.S.G. § 3A1.2 Application Note 4(A).) The Probation Office argued that this defendant was resisting but his conduct was "pulling the firearm away from the officer, not pointing it at him." *Id*. The Government anticipates Officer Bateman's testimony will show the defendant was attempting to draw his firearm and point it toward Officer Bateman. In *Hill*, the Eighth Circuit found that attempting to draw the firearm and point it toward the officer was sufficient to apply the enhancement. *Hill*, 583 F.3d at 1077, 1080. Similarly, the defendant in

---

[1] The *Hill* court also determined the application of both enhancements did not constitute impermissible double counting. *See Hill*, 583 F.3d at 1080 - 81.

Case 4:15-cr-00358-DGK   Document 33   Filed 08/16/16   Page 5 of 11

this case was attempting to retrieve a weapon from his waistband and point his firearm at Officer Bateman. Based on *Hill*, the Eighth Circuit has not required that a defendant successfully retrieve the firearm out of a waistband and point it at an officer to apply the enhancement. Considering the similarities to *Hill*, the Government anticipates the Court will have sufficient evidence to apply the six level enhancement for assault of an official victim pursuant to U.S.S.G. § 3A1.2(c)(2).

      3.     *Grounds for Upward Departure*

The United States Sentencing Guidelines give the Court wide latitude in its ability to upwardly depart from the calculated guideline range based on inadequacy of criminal history as well as the factors noted in 18 U.S.C. § 3553. *See generally* U.S.S.G. §§ 4A1.3 and 5K2.0. Mimicking the language of the relevant statute, the Guidelines note that, in general, the Court may depart from the guideline range if:

> there exists an aggravating…circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

U.S.S.G. § 5K2.0(a)(1)(A). The Guidelines further note that:

> If reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

U.S.S.G. § 4A1.3(a)(1)(A). The Sentencing Guidelines appear to contemplate that an upward departure would be necessary for the same reasoning noted below in support of the Government's request for a variance based on the factors listed in 18 U.S.C. § 3553(a). Thus, for the same reasons noted below, the United States believes an appropriate sentence is a total of 120 months of imprisonment.

6

### C. *Sentencing Factors Under 18 U.S.C. § 3553(a)*

To properly sentence the defendant, the Court must deduce a "reasonable" sentence which is presumed, but not required to be, within the advisory Sentencing Guidelines, and takes into account the sentencing factors described in 18 U.S.C. § 3553(a). *United States v. Farmer*, 647 F.3d 1175, 1178-9 (8th Cir. 2011). Based on the aggravating circumstances of this case and the defendant's criminal history, an upward variance from the calculated Guideline range is appropriate. In this case, the factors listed in 18 U.S.C. § 3553(a) as to this defendant can be summarized as follows:

#### 1. *Nature and Circumstances of the Offense*

The facts of the offense and the Government's anticipated evidence are outlined above. In addition to the crime of illegally possessing a firearm, the defendant created a grave risk to the life of Officer Bateman and himself by attempting to draw his firearm. The defendant had ample opportunity at the outset of his encounter with law enforcement to notify the officers of the lethal firearm concealed in his waistband. Instead, the defendant waited until Officer Bateman discovered the firearm and then attempted to draw the firearm. The danger of the defendant's actions is made apparent by his statement "'Shoot me. I wish you would have shot me.'" (PSR ¶ 6.) The facts of the offense and danger created by the defendant create an aggravating factor when considering the nature and circumstances of the offense.

#### 2. *History and Characteristics of the Defendant*

The defendant has a significant criminal history and is a criminal history category IV. (PSR ¶ 35.) The defendant's criminal history has been consistently escalating from simple possession of marijuana to felony offenses of assault on a law enforcement officer, resisting arrest, and endangering the welfare of a child. (PSR ¶¶ 26-31.) The facts of the defendant's

7

prior conviction in Jackson County, Missouri case number 1016-CR03380-01 are alarming. In the Jackson County case, the defendant was driving a Jeep Cherokee which was reported stolen. (PSR ¶ 31.)  Officers observed the Jeep traveling at a high rate of speed and into oncoming traffic.  *Id*.  Officers attempted to approach the defendant after he drove into an embankment; however, the defendant reversed down the embankment and struck an officer and his patrol vehicle.  *Id*.  The officer fired once, but stopped firing after learning there were children inside the Jeep.  *Id*.  The defendant was arrested after an additional pursuit.  *Id*.  Two children were removed from the backseat.  *Id*.  Neither child was found wearing a seatbelt.  *Id*.  A loaded handgun was found in the driver's seat which had been occupied by the defendant.  *Id*.  The defendant had multiple violations relating to the use of controlled substances while incarcerated on the Jackson County case.  *Id*.  The defendant was released to parole on March 22, 2015, after being extended in the Department of Corrections for his poor behavior while incarcerated.  *Id*.

The defendant's history and characteristics are not accurately represented by a criminal history category IV.  The defendant has shown an increasingly dangerous pattern of criminal activity since his initial brushes with the law beginning in 2004.  The defendant was only on parole for seven months when this new offense was committed.  Considering the defendant's poor behavior while incarcerated and the severe nature of his Jackson County conviction, the history and characteristics of this defendant support an upward departure and/or variance.  A sentence above the advisory Guideline range is appropriate, considering the defendant's blatant disrespect for the safety of himself, those around him, and law enforcement officers.

      3.    *<u>Seriousness of the Offense / Promote Respect for the Law / Just Punishment</u>*

This is a serious offense, and it deserves a just punishment.  The defendant made decisions to place himself and Officer Bateman in grave danger.  His history and characteristics

show a repeated pattern of potentially lethal behavior that put him in situations where he could be killed. The defendant's decisions are concerning not only based on the facts of this case, but considering he had been recently released on parole in a case where he hit a police officer with a vehicle while fleeing with unrestrained small children, and a loaded firearm in the car. This Court must decide what sentence will serve the purpose of promoting respect for the laws of the United States. That is a difficult proposition when the defendant has displayed, time and time again, a blatant disrespect for the law and the safety of the community. His actions while on supervision, demonstrate that this defendant does not have any respect for the law. The Government advises the Court that a sentence above the advisory Guidelines range will reflect the seriousness of this offense, will serve the purposes of promoting respect for the law, and will provide just punishment.

4. *Deterrence and Protection of the Public*

Based on the defendant's criminal history, a sentence above the advisory Guideline range will serve as a deterrent to other individuals who would follow in this defendant's footsteps. This Court has the opportunity to convey to other defendants that prior convictions and future conduct that endangers the lives of others must be taken seriously, particularly in light of a defendant who has been convicted of endangering the lives of law enforcement and children while resisting arrest, and possessing firearms. A defendant who refuses to abide by the law or the conditions of parole while on release for a serious offense poses a danger to the safety of the public. A sentence above the advisory Guideline range ensures that the public is protected from this defendant, at least for a period of time, and will deter others from committing similar crimes.

9

5. *Effectively Provide Defendant with an Opportunity to Rehabilitate*

A sentence above the Guideline range would provide this defendant an opportunity to rehabilitate himself. The services and potential drug treatment that he will receive while incarcerated and on supervised release will present, yet again, another opportunity for the defendant to take advantage of opportunities to turn his life around. A sentence above the Guideline range, followed by the maximum term of supervised release (three years) will allow the defendant to be supervised by Probation once his sentence has been completed. Based on the defendant's criminal history and previous failure at being supervised on parole, a new combination of incarceration and supervision is appropriate.

D. *The Government's Specific Sentencing Recommendation*

Based on all of the above factors, the Government would recommend a sentence of 120 months, followed by three years of supervised release. This recommendation will address the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Tammy Dickinson
United States Attorney

By: */s/ Adam Caine*

Adam Caine #62090
Assistant United States Attorney
Narcotics & Violent Crimes Unit

Charles Evans Whittaker Courthouse
400 East 9th Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a copy of the foregoing was delivered on August 16, 2016, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record:

*/s/ Adam Caine*

Adam Caine
Assistant United States Attorney